UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:25-CV-00151-GNS

EVER GONZALEZ MATEO                                             PETITIONER

v.

KRISTI NOEM, in her Official Capacity as
Secretary, Department of Homeland Security;
TODD LYONS, in his Official Capacity as
Acting Directory, U.S. Immigration and
Customs Enforcement;
PAM BONDI, in her Official Capacity as
Attorney General of the United States; and
MIKE LEWIS, in his Official Capacity as
Hopkins County Jailer                                          RESPONDENTS

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on the Petitioner's Petition for Writ of Habeas Corpus
(DN 1) and Respondents' Motion to Dismiss and Response to the Show Cause Order (DN 8).
Following the issuance of the Court's Amended Show Cause Order (DN 5), the Court conducted
a hearing on November 26, 2025, and the parties submitted supplemental briefs (DN 12, 13).

## I.    <u>BACKGROUND</u>

Petitioner Ever Gonzales Mateo ("Mateo") is a native of Honduras who has been in the
United States for an unknown period time.  (Resp'ts' Mot. Dismiss & Resp. Show Cause Order
3, DN 8 (citing Resp'ts' Mot. Dismiss & Resp. Show Cause Order Ex. 1, at 2-3, DN 8-1;
Resp'ts' Mot. Dismiss & Resp. Show Cause Order Ex. 2, at 2, DN 8-2)).

On October 10, 2025, Mateo was providing landscaping services outside of a hospital in
Chicago, Illinois, when he was allegedly arrested by officers employed by U.S. Immigration

Customs and Enforcement ("ICE").[1]  (Pet. ¶¶ 1, 13, DN 1).  Mateo contends that his arrest was illegal and only occurred because of his appearance, the nature of his work, and the fact that he speaks Spanish.  (Pet. ¶ 18).  He was then allegedly served with a Notice to Appear and a Warrant for Arrest of Alien, and he is currently subject to removal.[2]  (Pet. ¶ 14; Resp'ts' Mot. Dismiss & Resp. Show Cause Order Ex. 2, at 2-5; Resp'ts' Mot. Dismiss & Resp. Show Cause Order Ex. 3, at 2-3, DN 8-3).  On November 3, 2025, an immigration judge denied Mateo's motion for bond based on the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025).  (Pet. ¶¶ 14-15; Pet. Ex. 1, at 3-4, DN 1-1).

Mateo filed the Petition for Writ of Habeas Corpus against Respondents:  Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security; Todd Lyons, in his official capacity as Acting Director of ICE; Pam Bondi, in her official capacity as Attorney General of the United States; and Mike Lewis ("Lewis"), in his official capacity as Hopkins County Jailer[3] (collectively, "Respondents").  (Pet. ¶¶ 9-12).  Mateo alleges Respondents violated his Fifth Amendment right of due process of law.  (Pet. ¶¶ 26-29).  Respondents have moved to dismiss the Petition.  (Resp'ts' Mot. Dismiss & Resp. Show Cause Order, DN 8).

---

[1] According to the Form I-213 – Record of Deportable/Inadmissible Alien completed after Mateo's arrest, he was arrested by officers of the U.S. Border Patrol.  (Resp'ts' Mot. Dismiss & Resp. Show Cause Order Ex. 1, at 3, DN 8-1).

[2] During the Show Cause Hearing, Mateo's counsel raised several issues as to the documents relating to ICE's efforts to arrest and subject him to removal.  Those issues, however, are not pertinent to the grounds asserted in the Petition.

[3] "In Kentucky, the Jailer—a constitutionally elected county official—has "custody, rule and charge of the jail" or detention center in his or her county and 'of all persons in the jail.'" *Moore v. Mason Cnty.*, No. 16-185-DLB-CJS, 2018 WL 4211732, at *1 (E.D. Ky. Sept. 4, 2018) (citing Ky. Const. § 99; KRS 71.020).  Therefore, as the Hopkins County Jailer, Lewis is responsible for the HCJ and has custody of Mateo while he is incarcerated at that facility.

## II.   <u>DISCUSSION</u>

A writ of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."  28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(c)).  In seeking habeas relief, Mateo bears the burden of proving by a preponderance of the evidence that his detention is unlawful.  *See Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023); *Lallave v. Martinez*, 609 F. Supp. 3d 164, 171 (E.D.N.Y. 2022).

### A.   <u>Jurisdiction</u>

Respondents contend that this Court lacks jurisdiction to hear the Petition due to 8 U.S.C. § 1252(b)(9) and (g).  (Resp'ts' Mot. Dismiss & Resp. Show Cause Order 7-12).  This argument lacks merit.

#### 1.   *8 U.S.C. § 1252(b)(9)*

Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).  The Sixth Circuit has explained:

> Although § 1252(b)(9) has been described as the "unmistakable 'zipper' clause," its scope reaches only claims for judicial review "arising from any action taken or proceeding brought to remove an alien."  The Supreme Court has contrasted § 1252(b)(9) with § 1252(g), stating that § 1252(b)(9) is a broader jurisdictional

3

limitation for review of the legality of final orders of removal than § 1252(g) and demonstrates "the normal manner of imposing such a [general jurisdictional] limitation" for "all claims arising from deportation proceedings." "By its terms, the provision aims to consolidate 'all questions of law and fact' that 'arise from' either an 'action' or a 'proceeding' brought in connection with the removal of an alien."

*Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615, 626 (6th Cir. 2010) (alteration in original) (internal citations omitted) (citation omitted). "Indeed, § 1252(b)(9) 'is a judicial channeling provision, not a claim-barring one.'" *Id.* (citation omitted).

When considering a challenge to the legality of a person's detention under Sections 1225 or 1226, "[n]umerous district courts have rejected similar arguments asserting that § 1252(b)(9) bars [such] review . . . ." *E.V. v. Raycraft*, No. 4:25-CV-2069, 2025 WL 3122837, at *6 (N.D. Ohio Nov. 7, 2025); *Ochoa v. Noem*, No. 25-CV-10865, 2025 WL 2938779, at *3 (N.D. Ill. Oct. 16, 2025). In this instance, Mateo is challenging the legality of his detention while the removal proceeding is pending, and this Court has repeatedly held that such challenges are not barred by 8 U.S.C. § 1252(b)(9). *See Edahi v. Lewis*, 4:25-CV-129-RGJ, 2025 WL 3466682, at *2-3 (W.D. Ky. Nov. 27, 2025); *Navarrete v. Noem*, No. 4:25-CV-157-DJH, 2025 WL 3298080, at *2 (W.D. Ky. Nov. 26, 2025); *Singh v. Lewis*, No. 4:25-CV-133-DJH, 2025 WL 3298080, at *3-4 (W.D. Ky. Nov. 26, 2025); *Patel v. Tindall*, No. 3:25-CV-373-RGJ, 2025 WL 2823607, at *2 (W.D. Ky. Oct. 3, 2025); *K.E.O. v. Woosley*, No. 4:25-CV-74-RGJ, 2025 WL 2553394, at *3 (W.D. Ky. Sept. 4, 2025). As this Court has explained:

> [T]he Supreme Court has held that § 1252(b)(9) does not prohibit courts from hearing cases challenging whether bond hearings are required in removal proceedings. *See Jennings v. Rodriguez*, 583 U.S. 281, 292-95 (2018). And "[t]he Suspension Clause precludes 8 U.S.C. § 1252(a) from stripping the Court of jurisdiction to address a *habeas* petition presenting a constitutional claim."

*Alonso v. Tindall*, No. 3:25-CV-00652-DJH, 2025 WL 3083920, at *2 n.5 (W.D. Ky. Nov. 4, 2025) (second alteration in original) (quoting *Dornveil v. Noem*, No. 4:25-CV-1809, 2025 WL 2720786, at *2 (N.D. Ohio Sep. 24, 2025)).  Therefore, this argument lacks merit.

### 2.    *8 U.S.C. § 1252(g)*

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(g).  The Supreme Court has explained this narrow jurisdictional limit "applies only to three discrete actions that the Attorney General may take" as outlined in that statute.  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999).  Because the issues raised in the Petition do not directly involve any of those actions, Respondents' argument lacks merit.  This Court has jurisdiction under 28 U.S.C. § 2241, and Section 1252(g) does not bar Mateo's challenge of his detention.  *See Edahi*, 2025 WL 3466682, at *2-3; *Singh*, 2025 WL 3298080, at *2-3; *Gonzalez v. Noem*, No. 1:25-CV-00150-GNS, 2025 WL 3140802, at *4 (W.D. Ky. Nov. 10, 2025); *Alonso*, 2025 WL 3083920, at *2; *Patel*, 2025 WL 2823607, at *2; *K.E.O.*, 2025 WL 2553394, at *3.

### B.    <u>Due Process</u>

Mateo contends that his detention violates his Fifth Amendment right to due process.  (Pet. ¶¶ 77-81).  The due process clause applies to all persons, including non-citizens, regardless of their immigration status.  *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (internal quotation marks omitted) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))).  To determine whether a

civil detention violates a detainee's due process rights, courts apply the three-part balancing test articulated in the *Mathews v. Eldridge*, 424 U.S. 319 (1976).  The factors to be considered are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id.* at 335.

### 1.    *Private Interest*

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.  'It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (internal citation omitted) (citing *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982)).  "'In our society liberty is the norm,' and detention without trial 'is the carefully limited exception.'" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citation omitted).  "[W]hen assessing the private interest, courts consider the detainee's conditions of confinement, namely, 'whether a detainee is held in conditions indistinguishable from criminal incarceration.'"  *Martinez v. Noem*, No. 5:25-CV-01007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025) (quoting *Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025)).

In this instance, Mateo continues to be detained because Respondents assert that he is not entitled to release on bond arising from him being subject to 8 U.S.C. § 1225 and not 8 U.S.C. § 1226.  (Resp'ts' Mot. Dismiss & Resp. Show Cause Order 12-22).  In relevant part, 8 U.S.C. § 1225 provides:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an

alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1). An "arriving alien" is defined as "an applicant for admission coming or attempting to come into the United States . . . regardless of the means of transport." 8 C.F.R. § 1.2. "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(13)(A). "A noncitizen detained under Section 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' under 8 U.S.C. § 1182(d)(5)(A)." *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025) (citing *Jennings*, 583 U.S. at 300).

In relevant part, 8 U.S.C. § 1226 provides:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
    (1)    may continue to detain the arrested alien; and
    (2)    may release the alien on—
        (A)    bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
        (B)    conditional parole . . . .

8 U.S.C. § 1226(a)(1)-(2). This statute provides a "discretionary detention framework" to be applied to noncitizens who are arrested and detained pursuant to a warrant issued by the Attorney General. *Gomes*, 2025 WL 1869299, at *2 (citing 8 U.S.C. § 1226(a)). "It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings . . . ." *Jennings*, 583 U.S. at 289. After an arresting immigration officer makes an initial custody determination, the noncitizen "ha[s] the right to request a bond hearing before an Immigration Judge . . . ." *Gomes*, 2025 WL 1869299, at *2 (citing 8 C.F.R. § 1236.1(c)(8),

(d)(1)).  "Bond may be denied only if the government 'either (1) prove[s] by clear and convincing evidence that [the noncitizen] poses a danger to the community or (2) prove[s] by a preponderance of the evidence that [the noncitizen] poses a flight risk.'"  *Id.* (alterations in original) (quoting *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021)).  Besides releasing a noncitizen on bond, "the government may release a noncitizen detained under Section 1226(a) on an Order of Recognizance, which is a form of conditional parole."  *Id.* (citing 8 U.S.C. § 1226(a)(2)(B); *Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 747 (B.I.A. 2023); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007); *Cruz-Miguel v. Holder*, 650 F.3d 189, 191 (2d Cir. 2011)).  Overall, Section 1226(a) provides for a discretionary authority requiring "an individualized bond determination before a noncitizen may be taken into custody."  *Hyppolite v. Noem*, 25-CV-4304 (NRM), 2025 WL 2829511, at *8 (E.D.N.Y. Oct. 6, 2025) (citing *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020)).

Because Sections 1225(b)(2)(A) and 1226(a) "have notably different mandates as to whether a noncitizen must be provided with any individualized determination prior to being taken into custody," a central issue to the resolution of the Petition is which provision applies.  *Id.* at *7.  Mateo is an alien in the United States who has not been admitted and is therefore considered an "applicant for admission" under the INA.  8 U.S.C. § 1225(a)(1).  Currently, Mateo has been "arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  To determine whether Mateo is entitled to habeas relief, the Court must apply statutory interpretation principles in determining whether Section 1225(b)(2)(A) or Section 1226(a) applies.

"When interpreting a statute, the inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'"  *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022)

(quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)).  "If the statutory language is plain, [a court] must enforce it according to its terms."  *King v. Burwell*, 576 U.S. 473, 474 (2015) (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010)).  "So when deciding whether the language is plain, [a court] must read the words 'in their context and with a view to their place in the overall statutory scheme.'"  *Id.* at 486 (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).  "'[E]very clause and word of a statute' should have meaning . . . ."  *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (quoting *Inhabitants of the Twp. of Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)).  "Th[e] [Supreme] Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt' about the meaning of a statute."  *Dubin v. United States*, 599 U.S. 110, 120-21 (2023) (internal quotation marks omitted) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998)).  "[A] title is 'especially valuable [where] it reinforces what the text's nouns and verbs independently suggest.'"  *Id.* at 121 (second alteration in original) (quoting *Yates v. United States*, 574 U.S. 528, 552 (2015) (Alito, J., concurring in judgment)).

As to Section 1225, a sister court has stated:

> The title of § 1225 is revealing:  "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing."  The use of "arriving" to describe noncitizens strongly indicates that the statute governs the *entrance* of noncitizens to the United States.  This reading is bolstered by the fact that § 1225 clearly establishes an inspection scheme for when to let noncitizens into the country.  In fact, the subheading for § 1225(b)(2)(A) reads "Inspection of Other Aliens," reinforcing the idea that the subsection applies to those coming in, not already present.

*Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025) (internal citations omitted).  "The statute [] explicitly addresses its effect on 'stowaways' and 'crewm[e]n,' words that suggest arrival at a border or port of entry."  *Id.* (alteration in

original).   Likewise, it is noteworthy that Section 1225(b)(2)(A) allows the inspection of "applicant[s] for admission" who are "seeking admission" if they are not "clearly and beyond a doubt entitled to be admitted"  *Id.* at *4.  While the phrase "seeking admission" is not defined in Section 1225, a sister court has explained:

> This implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.  Noncitizens who are just "present" in the country—. . . who have been here for years upon years and never proceeded to obtain any form of citizenship (e.g. asylum, permanent residency, refugee status, visas, etc.)—are not "seeking" admission.  True, they may technically be "a noncitizen present in the United States who has not been admitted" to make them an "applicant for admission" but these are not interchangeable.  The statute also requires that an "examining immigration officer" determine that the noncitizen is "seeking admission."

*Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025).

In this instance, Mateo may be an applicant for admission because he did not lawfully enter the United States after an inspection and authorization from an immigration officer.  *See* 8 U.S.C. § 1225(a)(1).  Nevertheless, he is not "seeking" admission because he has been present in the United States for an unknown period of time.  *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 488 (S.D.N.Y. 2025); *Lopez-Campos*, 2025 WL 2496379, at *6.

"Whereas § 1225 governs removal proceedings for 'arriving aliens,' § 1226(a) serves as a catchall.  . . . § 1226(a) is the 'default rule' and 'applies to aliens already present in the United States.'"  *Pizarro Reyes*, 2025 WL 2609425, at *5 (quoting *Jennings*, 583 U.S. at 288, 301).  "[T]he idea that a different detention scheme would apply to non-citizens 'already in the country,' *see Jennings*, 583 U.S. at 289, as compared to those 'seeking admission into the country,' *see id.*, is consonant with the core logic of our immigration system."  *Martinez v. Hyde*, 792 F. Supp. 3d 211, 222 (D. Mass. 2025).  As a sister court has explained:

> [O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.  In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'"  Against this backdrop, the Court finds it particularly doubtful that Congress intended section 1225(b)(2)(A) to apply to non-citizens . . . detained while "present in the United States."

*Id.* (second alteration in original) (internal citations omitted) (citation omitted).

In 2025, Congress amended Section 1226 through the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), which further supports this interpretation.  "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."  *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995) (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979); *Moskal v. United States*, 498 U.S. 103, 109-11 (1990)).  As amended, Section 1226(c)(1)(E) applies to a noncitizen who is inadmissible under 8 U.S.C. § 1182(a)(6)(A), (6)(C), or (7) and "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . ."  8 U.S.C. § 1226(c)(1)(E).  As a sister court noted:

> Considering that § 1182(a)(6)(A)(i) specifically refers to aliens "present in the United States without being admitted or paroled," and that § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the recently created statutory exception would be redundant if § 1225(b)(2) authorized their detention as well.  That is, because an alien present in the United States without admittance would be unlikely to prove that they are "clearly and beyond a doubt entitled to be admitted," ICE would never need to rely on § 1226(c)(1)(E) to detain them.

*Pizarro Reyes*, 2025 WL 2609425, at *5 (internal citation omitted) (quoting 8 U.S.C. § 1226(c)(1)(E)(i)-(ii)) (citing *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013)); *see also United States v. Taylor*, 596 U.S. 845, 857 (2022) ("[Courts] do not lightly assume Congress

adopts two separate clauses in the same law to perform the same work.").  Both this Court and sister courts in this circuit have rejected the contention that Section 1225(b)(2) applies to noncitizens arrested on a warrant while residing in the United States.  *See, e.g.*, *Edahi*, 2025 WL 3466682, at *13; *Navarrete*, 2025 WL 3298080, at *3; *Singh*, 2025 WL 3298080, at *5; *Pizarro Reyes*, 2025 WL 2609425, at *5; *Lopez-Campos*, 2025 WL 2496379, at *8; *Gomes*, 2025 WL 1869299, at *6-7.

For these reasons, Section 1226(a) applies to Mateo, and he is entitled to a determination by an immigration judge as to whether he may be out on bond pending the resolution of his removal proceeding.  Because Mateo has been denied an opportunity to be released based on the erroneous application of Section 1225, his liberty is at stake.  Therefore, this factor strongly weighs in Mateo's favor.

### 2. *Risk of Erroneous Deprivation*

Under the second factor, a court must "assess whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks."  *Günaydin*, 784 F. Supp. 3d at 1187.  Here, Mateo continues to be detained, and the immigration judge erroneously determined that Section 1225 applied to Mateo and that he was ineligible for release on bond.  *See Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025) ("Where as here, ['the petitioner] has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [the] [petitioner] [] has had an opportunity to determine whether there is any valid basis for her detention."  (first alteration in original) (quoting *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679 (E.D. Cal. July 11, 2025)).  Accordingly, this factor also weighs in Mateo's favor.

### 3.    *United States' Interest*

Finally, the United States' interest in detaining Mateo without bond is low.  As this Court has recognized, "a 'routine bond hearing before an [immigration judge]' presents 'minimal' fiscal and administrative burdens, and 'there is an established process for doing so that [the Department of Homeland Security] can readily follow here.'"  *Alonso*, 2025 WL 3083920, at *9 (quoting *Hyppolite*, 2025 WL 2829511, at *15).  Thus, this factor also weighs in favor of Mateo.

In sum, all three factors clearly support a finding that Mateo's continued detention violates his due process rights.  Mateo has met his burden of proving by clear and convincing evidence of this violation of his due process rights.

When individuals have been illegally detained by ICE, courts have ordered their release. *See Edahi*, 2025 WL 3466682, at *14-15; *Navarrete*, 2025 WL 3298081, at *4; *Singh*, 2025 WL 3298080, at *6; *Patel v. Tindall*, No. 3:25-CV-373-RGJ, 2025 WL 2823607, at *6 (W.D. Ky. Oct. 3, 2025); *Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *7 (W.D. Ky. Sept. 19, 2025); *see also Roble v. Bondi*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025).  "Habeas has traditionally been a means to secure release from unlawful detention . . . ."  *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020). Consistent with these norms, Mateo must be released and is entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a) on the merits before a neutral immigration judge.[4]

---

[4] While the parties argue as to whether there was a violation of Mateo's Fourth Amendment rights, no such claim is asserted in the Petition.  (Resp'ts' Mot. Dismiss & Resp. Show Cause Order 22-23; Pet'r' Resp. Resp'ts' Mot. Dismiss & Reply Show Cause Order 3-4, DN 9). Accordingly, the merits of such a claim will not be addressed.  Similarly, it is unnecessary to analyze the impact of the decision granting class certification in *Bautista v. Santacruz*, No. 5:25-CV-01973-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), in ruling on the pending Petition in the case *sub judice*.

### III.    <u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED** as follows:

1.      The Petition for Writ of Habeas Corpus (DN 1) is **GRANTED**.  The United States is directed to release Petitioner Ever Gonzales Mateo from custody **IMMEDIATELY** and to certify compliance with the Court's Memorandum Opinion and Order by filing on the docket no later than **9:00 AM CT on December 8, 2025**.  During the pending removal proceeding, a neutral immigration judge will determine whether Mateo will be detained pending the resolution of that proceeding.

2.      Respondents' Motion to Dismiss (DN 8) is **DENIED**.

**Greg N. Stivers, Judge**
**United States District Court**
December 5, 2025

cc:      counsel of record